## 22958

BLUE RIDGE ELECTRIC COOPERATIVE, INC., Respondent v.
CITY OF SENECA, South Carolina, Appellant.

(376 S. E. (2d) 514)

Supreme Court

*Michael J. Smith,* Seneca, *Alexander S. Macauley* of *Miley, Macauley & Cain,* Walhalla, *M. John Bowen, Jr., Robert T. Bockman* and *Deborah A. Davis,* all of *McNair Law Firm, P.A.,* Columbia, *for appellant.*

*E. Crosby Lewis* and *Frank S. Potts* of *Lewis, Lewis, Bruce & Potts, P.A.,* Columbia, *Henry F. Floyd* of *Acker, Acker, Floyd & Welmaker,* Pickens, *John C. Lindsay, Jr.* of *Lindsay & Lindsay, John I. Rogers, III* of *Bennettsville,* and *Larry C. Brandt,* Walhalla, *for respondent.*

*Belton T. Zeigler, Frank W. Cureton* and *Edward K. Pritchard, III* of *Sinkler & Boyd,* Columbia, *for South Carolina Elec. and Gas Co., amicus curiae.*

*C. Pinckney Roberts,* Columbia, and *Charles L. Compton,* Laurens, *for Elec. Co-op. of South Carolina, Inc., Cent. Elec. Power Co-op., Inc.,* and *Saluda River Elec. Co-op., Inc., amicus curiae.*

*Dwight F. Drake, Arthur L. Coleman* and *Charles M. Black, Jr.,* Columbia, *for South Carolina Public Service Authority, amicus curiae.*

*James M. Brailford, III* and *Frank R. Ellerbe, III,* Columbia, *for South Carolina Ass'n. of Municipal Power Systems.*

*Roy D. Bates,* Columbia, *for Mun. Ass'n. of South Carolina.*

Heard Dec. 7, 1988.

Decided Feb. 6, 1989.

*Per Curiam:*

This case involves a city's provision of electric service to an annexed area which had been previously assigned to another electric supplier. The circuit court enjoined the city from providing this service. The city appeals, and we now reverse.

## FACTS

The City of Seneca ("the City"), in Oconee County, owns and operates an electric distribution system which provides electric service to customers within and without its municipal boundaries. Blue Ridge Electric Cooperative, Inc. ("the

Co-op") is a rural electrical cooperative providing electrical service to several upstate counties, including Oconee.

In September 1979, the City petitioned the Public Service Commission ("PSC") for a Certificate of Public Convenience and Necessity to extend service to territory outside its municipal limits. The territory the City sought to service included property owned by the Oconee County School District ("the School District"). The School District parcel was part of an area previously assigned by the PSC to the Co-op for electric service pursuant to S. C. Code Ann. § 58-27-640 (1976). The Co-op opposed the City's petition.

Over the next three and a half years, the PSC entertained the parties' arguments in hearings, accepted briefs, and met with the parties in attempts to narrow the issues; in May 1983, closing arguments were held.

On January 14, 1986, the City annexed a portion of the territory assigned to the Co-op; the annexed, assigned area included the School District property. Upon annexation, the School District property was vacant; only a Co-op electric line ran across it to serve the adjoining property.

On January 31, 1986, the PSC ruled on the City's petition. The PSC denied the City its requested Certificate of Public Convenience and Necessity and "prohibited and enjoined [the City] from providing electric service to new and additional customers located in territory previously assigned . . . to any electric supplier." No party sought judicial review of this order.

In September 1986, the School District requested that the City provide electric service to its property so the District could construct a new high school. The City extended its facilities and provided temporary electric service to the construction site.

In April 1987, the Co-op sued, alleging that the City's service to the School District property violated the 1986 PSC order. The circuit court agreed and issued an order which: (1) permanently enjoined the City from further violations of the PSC order; (2) prohibited City electric service to new and additional customers in assigned territories, regardless of subsequent annexation; and (3) directed the City to remove its electric facilities from the School District property.

The City appealed. By Writ of Supersedeas dated April 8,

1988, this Court stayed the circuit court's order pending this appeal.

## ISSUES

The parties propound differing statements of the questions presented by this appeal. The City's basic position, however, is that: (1) it did not violate the PSC order; and (2) even if it did, the circuit court's enforcement of the PSC's order contravened our decision in *City of Abbeville v. Aiken Electric Cooperative*, 287 S. C. 361, 338 S. E. (2d) 831 (1985). We address these arguments in turn.

## I. APPLICABILITY OF PSC ORDER

The City first argues that it did not violate the PSC order because the order was inapplicable to municipal functions within corporate limits. The City claims the PSC order addressed only the City's provision of electrical service to assigned areas outside corporate limits; once the City annexed the School District property—two weeks prior to the PSC order—electrical service to that area constituted service inside corporate limits. We agree and hold the PSC's injunction was inapplicable to the City's service of the School District property after annexation.

First, the language of the PSC order strongly suggests that its terms did not implicate City service in assigned areas post-annexation. The PSC confined the order to the City's four requests for "Certificate[s] of Public Convenience and Necessity to provide electric service in vast areas of territory *outside* its municipal limits." (Emphasis added.)

Next, the PSC reasoned that the City was prohibited from providing service within assigned areas by S. C. Code Ann. § 5-7-60 (1976),[1] which states in relevant part:

> Any municipality may perform any of its functions, furnish any of its services ... and make changes therefore and may participate in the financing thereof *in areas outside the corporate limits of such municipality* by contract ... except within a service area assigned by the Public Service Commission ...

---

[1] A section of the "Home Rule Act," Act No. 283, 1975 S. C. Acts 692.

(emphasis added). Relying on our decision in *City of Newberry v. Public Service Commission of South Carolina*, 287 S. C. 404, 339 S. E. (2d) 124 (1986), the PSC also ruled that municipal service within an assigned area would be *ultra vires* and illegal.

Section 5-7-60 and *City of Newberry*, however, restrict only the exercise of municipal functions outside corporate limits. At the time of service here, the School District property had been brought inside corporate limits via annexation. The injunctive relief framed in the PSC's order was therefore inapplicable to the City's provision of electrical service to the School District property after annexation. The annexation of that property eliminated the basis for and continued application of the injunction contained in the PSC order.

## II. MUNICIPAL ELECTRIC SERVICE IN PSC-ASSIGNED AREAS SUBSEQUENTLY ANNEXED

The City next contests the circuit court's enforcement of the injunction against City electric service in PSC-assigned territories "whether or not any such territories or parts thereof are annexed by the City."

This is not the first time this Court has been called upon to settle a perceived clash between certain "home rule" articles of the South Carolina Constitution[2] and Act No. 431, 1984 S. C. Acts 1865.[3] In upholding Act 431 against a constitutional attack by numerous municipalities in *City of Abbeville v. Aiken Electric Cooperative, Inc., supra,* we set forth the rights and obligations of assigned electric suppliers as follows:

A franchisee possessing a valid PSC territorial assignment to serve an area subsequently annexed ...
(1) Is permitted to continue service in that area to those premises being served as of the date of annexation ... [and]
(2) Is prohibited, without prior consent of the municipality, from extending or expanding service in that

---

[2] See S. C. Const. art. VIII, §§ 15 and 16.
[3] Now codified at S. C. Code Ann. §§ 58-27-650, 58-27-670, 58-27-680, 58-27-1280, and 58-27-1360 (Supp. 1987).

> area by the use of any streets, alleys, public property or public ways after the date of annexation ...

287 S. C. at 370-371, 338 S. E. (2d) at 836.

The municipalities argued in *City of Abbeville* that the Act violated their Article VIII, § 15 right of consent[4] by reserving to assigned suppliers the exclusive right to serve territories which, through annexation, had come within municipal limits. The municipalities argued that the last sentence of amended § 58-27-670 would guarantee assigned suppliers an exclusive franchise because the City would face the following choice: either consent to expansion by the assigned supplier, or allow customers in the annexed area to go without electric service. The consent required of a municipality, they argued, would not really be consent at all. We addressed the municipalities' concern as follows:

> Amended § 58-27-670 contains the following sentence: Annexation may not be construed to increase, decrease, or affect any other right or responsibility a municipality, rural electric cooperative, or electrical utility may have with regard to supplying electric service in areas assigned by the [PSC] in accordance with Chapter 27 of Title 58.
>
> Cities express concern that this sentence will prevent any entity other than the assigned Co-op from supplying annexed or incorporated areas. *However, under S. C. Code Ann. § 58-27-1230 (1976), no PSC permission is required for municipal electric utilities to operate within corporate limits.* Other utilities may operate in such areas upon compliance with the PSC certification process. We interpret the above referenced sentence to preserve, not limit, all rights electric providers enjoy under the statutory scheme.

287 S. C. at 369, 338 S. E. (2d) at 835 (emphasis added).

In the case now before us, the circuit court dismissed the

---

[4] "No law shall be passed by the General Assembly granting the right to construct and operate in a public street or on public property a[n] ... electric plant ... or to use the streets for any other such facility, without first obtaining the consent of the governing body of the municipality in control ..."

foregoing passage from *City of Abbeville* as dictum and ruled against the City, holding: (1) that municipalities are prohibited from serving previously assigned areas, notwithstanding subsequent annexation; and (2) the only exception to this rule is when the PSC finds, pursuant to S. C. Code Ann. § 58-27-650(B) (Supp. 1987), that the assigned supplier's service is inadequate, undependable or unreasonably discriminatory.

On appeal, the City contends that under our *City of Abbeville* interpretation of Act 431, a municipality may either consent to expanded service by the assigned supplier or itself serve new premises and customers within the assigned, annexed area. The City argues that the above-quoted paragraph from *City of Abbeville* controls and the circuit court erred in characterizing our analysis as dictum.

We agree with the City.

In *City of Abbeville*, we interpreted Act 431 as striking a legitimate balance between the statutory rights of assigned electric suppliers and the statutory and constitutional rights of expanding municipalities. *Crucial* to that interpretation was our recognition that § 58-27-1230 obviated the requirement of PSC permission for municipal electric utilities to operate within corporate limits. Absent the option of municipal service to new premises and customers in assigned, annexed areas, the assigned supplier would possess, for all practical purposes, an exclusive territorial service right. Municipalities could not realistically deny consent to expanded service by these assigned suppliers; denying consent would be tantamount to denying property owners in the annexed area any electric service at all. Our *City of Abbeville* analysis flatly prohibited an interpretation of Act 431 which would permit a municipality's Article VIII, § 15 right of consent to be undermined in this manner.

To uphold the circuit court's injunction against the City would be to create an irreconcilable conflict between Act 431 and S. C. Const. Art. VIII, § 15 and reopen the issue of the Act's constitutionality. We adhere to our *City of Abbeville* analysis and reverse the circuit court.

Finally, we reject the Co-op's assertion that municipal electric service in assigned, annexed territories

constitutes an unconstitutional taking of a valuable Co-op property right without due process of law.[5] *City of Abbeville* and the cases cited therein refer to a co-op's territorial assignment as a valuable property right in the context of retrospective "ouster," not prospective extensions of service. *City of Abbeville* clearly established that assigned suppliers have no absolute statutory right to serve annexed areas; their right to extend service via public property has long been restricted by the prior municipal consent requirement.

We hold the circuit court erred in enforcing the provisions of the PSC order, in ordering removal of City electric service from the School District property, and in enjoining the City from further service in assigned, annexed territories. Consistent with our *City of Abbeville* opinion, we hold that a municipality may provide electric service to new customers and premises in areas it has annexed, notwithstanding previous PSC assignment of the area to another electric supplier.

Reversed.

---

[5] U. S. Const. Amend. XIV, § 1; S. C. Const. art. 1, § 13.