24405

CAROLINA POWER & LIGHT COMPANY, Respondent v. The TOWN OF PAGELAND and Lynches River Electric Cooperative, Inc., Appellants.

(471 S.E. (2d) 137)

Supreme Court

*E. Crosby Lewis* and *Raymon E. Lark, Jr.,* both of *Lewis, Rogers & Lark, P.A., Pinckney Roberts,* Columbia; and *William O. Spencer, Jr.,* of *Leppard, Henderson & Spencer,* Chesterfield, *for Appellants.*

*John M. Milling,* of *Milling Law Firm, P.A.,* Darlington; *C. Anthony Harris,* of *Jennings & Harris,* Cheraw; *Harold W. Jacobs* and *Jeanne M. Mason,* both of *Nexsen, Pruet, Jacobs & Pollard,* Columbia, *for Respondent.*

Heard Oct. 19, 1995.

Decided Apr. 8, 1996; Reh. Den. June 7, 1996.

WALLER, Justice:

The Town of Pageland (Pageland) and Lynches river Electric Co-operative (Co-op) appeal a circuit court order granting Respondent, Carolina Power and Light (CP&L) summary judgment. We affirm in part, reverse in part.

## FACTS

CP&L has been supplying electricity in Pageland since 1925. Co-op began providing electric service in 1939, at a time when Pageland was defined as a "rural"[1] community. In 1949,

---

[1] A "rural area" is defined as one not within the boundaries of a town having a population in excess of 2500. S.C. Code Ann. § 33-49-20(1) (1990); *Carolina Power and Light v. Bennettsville,* 314 S.C. 137, 442 S.E. (2d) 177 (1994).

Pageland annexed an area in which Co-op had existing lines. In 1981, Pageland gave CP&L an indeterminate permit to provide service within its boundaries. By the 1990 census, Pageland had grown to a population of 2666 people, making it a "non-rural" community for purposes of the rural Electric Co-operative Act (Act). S.C. Code Ann. § 33-49-10 (1990) *et seq.* The Act determines when rural cooperatives may provide electric service in "non-rural" areas. S.C. Code Ann. § 33-49-250(1) (1990.)

In July, 1993, Pageland adopted Ordinance 130 which permits customers with a 750-Kilowatt load or higher a one-time option of deciding whether to continue service with CP&L, or of choosing anther electric supplier upon expiration of their current electrical contract.[2] The ordinance permits a supplier to provide service to these customers notwithstanding the industry is not within the supplier's present territory, and notwithstanding the supplier may be prohibited from providing service by its status as a rural cooperative.

CP&L instituted this action contending Ordinance 130 was invalid as it effectually allowed termination of its indeterminate permit without a Public Service Commission (PSC) finding of inadequate service, as required by S.C. Code Ann. § 58-27-440 (1976.) CP&L also claimed Co-op should be prohibited from providing electric service within Pageland's boundaries because Pageland was no longer a rural area. The circuit court agreed with both contentions and granted CP&L's motion for summary judgment.

ISSUES

1. Is Ordinance 130 invalid under S.C. Code Ann. § 58-27-440 (1976)?

2. May Co-op continue to provide electric service within Pageland even though Pageland is no longer a rural area?

1. SECTION 58-27-440

The circuit court held Ordinance 130 was invalid as it conflicted with S.C. Code Ann. § 58-27-440 (1976). Appellants contend this was error. We disagree.

---

[2] There are presently five industries in Pageland which have a 750-kilowatt load or higher; all of them are currently CP&L customers and are within its territory. After adoption of Ordinance 130, two of the customers notified CP&L of their intent to disconnect upon expiration of their contracts.

Under S.C. Code Ann. § 58-27-440 (1976), an indeterminate permit given to an electric utility may be revoked only upon the consent of the municipality and a finding by the Public Service Commission (PSC) that the service rendered by the supplier is inadequate. Here, the effect of Pageland's ordinance is to allow termination of CP&L's service to its industrial customers without a PSC finding of inadequate service. As such, the circuit court correctly ruled the ordinance conflicts with § 58-27-440 and is therefore invalid.[3] *See Hospitality Assoc. of South Carolina, Inc. v. County of Charleston, et al.*, 320 S.C. 220, 464 S.E. (2d) 113 (1995) (a local ordinance enacted pursuant to the powers granted in S.C. Code Ann. § 5-7-30 is not valid if it conflicts with the constitution or general law of this state).[4]

Under S.C. Code Ann. § 33-49-250, a rural cooperative may provide service only in rural areas, i.e., those with a population under 2500. Section 33-49-250(1) was amended in 1963 to provide two exceptions:

> . . . the act of incorporating or annexing into a city or town an area in which the cooperative is serving shall constitute the consent of the governing body of such city or town for the cooperative to continue serving all premises then being served and to serve additional premises within such area until such time as the governing body of the city or town shall direct otherwise . . .
>
> . . . provided, further, that the right of a cooperative to continue to serve in a city or town in which it is the prin-

---

[3] Pageland contends this holding is contrary to our decision in *Berkeley Elec. Coop. v. PSC*, 304 S.C. 15, 402 S.E. (2d) 674 (1991). We disagree. *Berkeley* involved service in **newly annexed** areas, not a case in which a municipality attempted to detract from an existing supplier's customer base without compliance with § 58-27-440.

[4] Contrary to appellants' argument, application of § 58-27-440 in this case does not conflict with Pageland's right of consent under S.C. Const. art VIII, § 15. *See City of Abbeville v. Aiken Elec. Coop.*, 287 S.C. 361, 338 S.E. (2d) 831 (1985) (Article VIII, § 15 inapplicable to statute limiting a city's right to oust *an existing* electric supplier). Moreover, our opinion in *City of Newberry v. Public Service Comm'n*, 287 S.C. 404, 339 S.E. (2d) 124 (1986) does not support Pageland's contention that all pre-existing statutes relative to municipal supply of electricity were impliedly repealed by adoption of Home Rule. Unlike *Newberry*, nothing in § 5-7-30 specifically supersedes the statutory provisions of §§ 58-27-440 or 33-49-250. On the contrary, § 5-7-30 specifically prohibits municipalities from enactment of measures inconsistent with the general law of the state.

cipal supplier of electricity shall not be affected by the subsequent growth of such town beyond a population of two thousand five hundred persons.

The circuit court ruled both exceptions inapplicable[5] and, accordingly, held Co-op was not permitted to continue to provide service within the Pageland limits.[6] We disagree.

At the time of Pageland's 1949 annexation, Cp-op was serving customers in the area. The circuit court ruled the first exception, the "annexation exception," inapplicable because, it did not become effective until 1963, at a time when Co-op had been serving the area for 14 years. Finding no legislative intent the annexation exception be applied retroactively, the court found it inapplicable.

The cardinal rule in determining whether a statute will have prospective or retroactive application is that the intent of the legislature controls. *Jenkins v. Meares*, 302 S.C. 142, 394 S.E. (2d) 317 (1990). A statute is not to be applied retroactively unless that result is so clearly compelled as to leave no room for doubt. *See American Nat'l Fire Ins. v. Smith Grading*, 317 S.C. 445, 454 S.E. (2d) 897 (1995). Courts will reject a meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the legislature or would defeat the plain legislative intent. If possible, the court will construe the statute so as to escape the absurdity and carry the intention into effect. *Focus on Beaufort v. Beaufort County*, 318 S.C. 227, 456 S.E. (2d) 910 (1995).

We find retroactive application of the statute here so clearly compelled as to leave no room for doubt. Indisputably, the intent of the legislature in adopting the annexation exception was to permit coops to continue to serve existing customers and not require ouster of a coop due solely to a city's annexa-

---

[5] The circuit court ruled the second exception inapplicable as Co-op is not the "principal supplier" of electricity in Pageland. Although "principal" is not defined in the Rural Electric Cooperative Act, §§ 33-49-10 et seq., the plain meaning of the term clearly indicates that CP&L is, in fact, Pageland's principal supplier, having a greater number of customers and generating more revenue. We concur with circuit court's ruling that this exception is inapplicable.

[6] The order permits Co-op to continue serving customers in an area served by it at the time of Town's 1984 annexation. The parties dispute whether Co-op is entitled to serve **new** customers in the area annexed in 1984. The plain language of the annexation exception permits Co-op to serve additional

tion. To apply the statute prospectively only would force an ouster of Coop; we decline to apply the statute in a manner so clearly contrary to the legislative intent. Accordingly, we hold the exception applies retroactively to permit Coop to continue serving those customers within Pageland's municipal boundaries which it has been serving since the 1949 annexation.

## CONCLUSION

The circuit court correctly ruled that Pageland's Ordinance No. 130 conflicts with S.C. Code Ann. § 58-27-440 insofar as it permits some of CP&L's customers to terminate service without a finding of inadequacy by the PSC. However, we find the annexation exception of § 33-49-250(1) applies to Pageland's 1949 annexation such that Co-op is permitted to continue serving those customers is was lawfully serving at that time.

Accordingly, the judgment below is

Affirmed in part, reversed in part.

FINNEY, C.J., TOAL, MOORE, JJ., and KAYE G. HEARN, Acting Associate Justice, concur.